# PLATT *v.* SHIPLEY.

PATENTS; INTERFERENCES;. PRIORITY; DUE DILIGENCE; EXCUSA-
BLE DELAY; MISTAKE AS TO SCOPE OF FORMER PATENT.

1. A decision of the Commissioner of Patents awarding priority of
   invention to S. and H. *affirmed* for the reason that although the
   rival applicant was the first to conceive, he was the last to
   reduce the invention to practice, and did not use due diligence
   in such reduction to practice.
2. A person can not be charged in law with any want of due dili-
   gence before the advent of a rival inventor upon the field;
   but at and after that time he becomes liable to lose the benefit
   of his previous conception unless he uses due diligence. De-
   lay for the purpose of the elaboration and perfection of a
   crude conception may well be commended; but it will not be
   excused where no such end is in view.
3. The fact that a party does not know that a rival has entered the
   field is no excuse for delay, since the risk that a rival may
   appear at any time is something which every inventor is
   bound to contemplate and to anticipate, and in this lies the
   fundamental reason for the requirement of due diligence.
4. A mistake by a party in supposing that the invention was cov-
   ered by a prior patent granted to him can not under any
   known principle of law be considered a good excuse for delay
   in perfecting the invention or filing an application covering
   the same. Under the circumstances of this case the applicant
   is, furthermore, chargeable with the knowledge possessed by
   his agent or attorney as to the scope of the former patent.

No. 72. Submitted November 8, 1897. Decided December 8, 1897.

HEARING on an appeal from the Commissioner of Patents
in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. George Cook* for the appellant.

*Mr. William H. Finckel* and *Mr. Charles E. Mitchell* for
the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference cause arising out of a controversy between the appellant and the appellees concerning an invention for an improvement in the making of buttons. The subject-matter of the issue between the parties is defined and formulated by the Patent Office as follows:

"1. A button formed with a depressed centre, having secured in the bottom thereof a clinching-die, the lower plate of the latter resting against the bottom of the button proper and serving as a bearing for the upset end of a button-fastener.

"2. A button constructed with a depressed centre having a die located therein and resting against the bottom of the button to act as a reinforce therefor, and a top plate."

As explained by the Examiner of Interferences in the Patent Office, in a statement which seems to be accepted as correct by both parties, the subject of invention is thus described:

"The matter in issue is a button which is to be fastened to a garment by means of a tack driven through the garment into the button-head, and its point upset or clenched by means termed a "die" or "anvil." The feature that lends patentability to this particular button is the form of anvil, which is made crown or dome shaped, with its base, which is provided with an opening for the insertion of the tack, resting upon the back-piece or bottom of the button. This anvil performs two functions when the parts of the button are properly assembled—viz., first, to reinforce the bottom of the button, and second, to upset the end of the tack or rivet. When upset, the end of the tack bears against the bottom of the die."

And the Examiner has also well and concisely stated the situation of the parties. He says:

"Shipley and Hyde are connected with the Scovill
11 Ct. App.—38

Manufacturing Co., of Waterbury, Conn., which concern in the year 1893, were making a button under the Bryant patent, No. 482,959, which was found in practice to be defective. To remedy the defect the present invention was made in December, 1893. Experiments were conducted during this month, and in January, 1894, the goods were ready for the market, the first shipment being made February 1, 1894. Thereafter shipments were regularly made and the button has been extensively sold. Two forms are being manufactured by the Scovill Co. In one the anvil is made in two pieces, the lower one of which overlaps and encloses the lower edge of the upper piece, and in the other the anvil is made in one piece. Specimens of the experimental buttons and those which followed and are now manufactured have been offered in evidence. Application for patent was filed February 19, 1894.

"C. M. Platt is one of the oldest of the living inventors of buttons and one of the largest, if not the largest, manufacturer in this country. Although making and selling a large variety of different forms, he has not manufactured this particular button for the market. His application was filed subsequent to the marketing of the button by Shipley and Hyde, and also to their application. His case rests upon the determination of the question whether he reduced the invention to practice in the summer of 1891, as alleged by him; and if this must be answered in the negative, then was he engaged in a diligent prosecution of the invention up to the time application for patent was filed?"

In their preliminary statement Shipley and Hyde state that they conceived the invention about the middle of December, 1892, and at the same time explained the same to others, but no model was then made; but on or about January 4, 1893, they reduced the invention to practice, made a drawing of it for future reference, and prepared to manufacture the article for the trade, and that they have sold it in large quantities since about the middle of May, 1893. Their ap-

plication for a patent, as already stated, was filed on February 19, 1894.

The appellant, Clark M. Platt, in his preliminary statement, says that he conceived the invention in the early part of the year 1891; that he disclosed the invention to others and made drawings thereof about the month of April, 1891 ; that he made samples thereof and thereby reduced it to practice about May or June, 1891, and that since the year 1891, he has not manufactured the article for commerce. He filed his application for a patent on May 8, 1894, upward of two months after the application of Shipley and Hyde.

It is conceded by Shipley and Hyde that they made a mistake in the dates mentioned in their preliminary statement, and that their invention was made and reduced to practice, not in December of 1892 and January of 1893, but in December of 1893 and January of 1894, as stated by the Examiner of Interferences.   With this correction, however, it is abundantly proved, and it does not seem to be controverted, that they have proved their case in accordance with their statement.   It is also satisfactorily proved, and it seems likewise not to be controverted, that the appellant, Platt, had conceived the invention in 1891, long before the conception by Shipley and Hyde, and that in April of 1891 he had made a drawing of it, and had communicated the invention to his nephew and through his nephew, as his agent, to his attorney for the purpose of having an application filed for a patent.   But it is also conceded by him that, unless the making of a few samples in May or June of 1891 constitutes a reduction to practice, he never reduced the invention to practice, and he never made any attempt to manufacture the article for commercial use.   We have, therefore, the case of independent inventors working on the same line of invention, of whom Platt was beyond all question the first to conceive but the last to apply for a patent, and Shipley and Hyde the last to conceive but the first to place the article in commercial use, and the first to apply for a patent.

Upon the proof in the cause the Examiner of Interferences awarded priority of invention to Shipley and Hyde. Upon appeal, the Board of Examiners-in-Chief reversed this decision and awarded priority to Platt. But upon appeal from the Board to the Commissioner of Patents, the Assistant Commissioner, acting as Commissioner, reversed the decision of the Board, and held with the Examiner of Interferences that Shipley and Hyde were entitled to judgment of priority. From this last decision the cause now comes to us on appeal.

It is claimed on behalf of Platt, first, that he reduced the invention to practice in May or June of 1891 by making at that time some samples of buttons like the subject of the present issue, and, second, that even if that should not be regarded as a sufficient reduction to practice, he was in the exercise of due diligence to prosecute the invention, which he was confessedly the first to conceive, and is therefore entitled to the patent.

With reference to the first position, all the tribunals of the Patent Office have found against the contention of Platt. They have found that there is no sufficient proof in the record to show that the samples made by him in 1891 were buttons corresponding to the issues in this case, and that at most these samples were mere experimental constructions, the unsatisfactory character of which was sufficiently manifested by the fact that the inventor wholly disregarded them as soon as they were produced, and practically threw them away and permitted them to be lost. We think the tribunals of the Patent Office were entirely right on this point, and that no other conclusion than that which they reached could reasonably have been deduced from the testimony. In fact, in the argument before us on behalf of Platt, no great stress was laid upon this point; and while several pages of the brief are devoted to it, no reason has been adduced to shake the unanimous decision of the tribunals of the Patent Office upon the question.

The substantial question in the case is whether Platt,

being the first to conceive the invention, was in the exercise of due diligence in the prosecution of his invention at the time of the arrival upon the field of a rival inventor and to the time of his application for a patent, so as thereby to overcome the claim of his rival, who was the second to conceive, but who promptly thereupon prosecuted the invention to a successful result, placed it in commercial use, and speedily followed up his action by an application for a patent. And this question, in the light of the testimony, we are compelled, with the Acting Commissioner of Patents, to answer adversely to Platt.

It appears from the record that in the month of April, 1891, Mr. C. M. Platt, immediately upon his conception of the invention, communicated it to his nephew and agent, Mr. I. G. Platt, and that the latter, within a few days thereafter, went to New York to communicate with their attorney with reference to an application for a patent. After consultation with the attorney, it was deemed expedient to make the several features of the invention the subject-matter of three or four different applications, for the purpose of procuring a patent for each one. The application for the first division of the invention, as it is called, was filed on May 16, 1891, and resulted in a patent which was issued on December 15, 1891. The application for the second so-called division was filed on October 26, 1891, and was rejected during the following year, 1892, as having been covered by some previous patent issued to Platt; and the latter, through his attorney, acquiesced in the rejection by the Board of Examiners-in-Chief, and prosecuted the application no further.

It is claimed that thereupon, about the middle of the year 1893, there was discussion between Mr. I. G. Platt and the attorney in New York with reference to the filing of an application for a patent for the third division of the invention, which is the matter of the issue between the parties in these proceedings, and that it was then resolved to make

such application.    It appears from the testimony, however, that no application was prepared until the latter part of December, 1893, which is about the same date that is given by Shipley and Hyde for their conception of the invention; that then the papers were sent to Waterbury for examination or revision by Mr. Platt; that after revision they were returned to the attorney in New York; that the latter then prepared them for final execution by Mr. Platt and sent them to him to be executed, and that they finally reached the Patent Office, and were filed, as already stated, on May 8, 1894.    This is all that was done by Platt or on his behalf in the matter, except that subsequently, on August 28, 1894, he filed an application for a fourth division of the invention, which in some way not explained, and not necessary here to be considered, was made to cover the matter in issue here also, and was permitted to go to a patent on September 29, 1896.

There is no explanation whatever of the extraordinary delay of Platt, or of those who were acting for him, in postponing for upward of three years the application for a patent for the issue of this interference, if he really had the invention, as he claims, in April of 1891.    And yet, of course, he can not be charged in law with any want of due diligence before the advent of a rival inventor upon the field.    But at and after that time he undoubtedly became liable to lose the benefit of his previous conception unless he did use due diligence.    We fail, however, to find any evidence whatever of greater diligence then than had been manifested in the three previous years.    As appears from the record, and as has been already stated, all that was done for the four following months was the preparation of the papers for an application for a patent, which might have been accomplished within forty-eight hours, and for which one week would certainly have afforded most ample time.    With this dilatoriness we may contrast the action of Shipley and Hyde, who, within less than two months after their conception of the in-

vention, had reduced it to practice, and filed their application in the Patent Office, and within three months thereafter had placed the manufactured article in large quantities upon the market.

Delay for the purpose of the elaboration and perfection of a crude conception, may well be commended, and we have had occasion to express such commendation. But there was here no such elaboration, in fact no elaboration whatever. The invention is claimed to have been conceived in April of 1891, and with the exception of a few doubtful and unsatisfactory specimens, which were thrown away as useless, there was nothing whatever done thereafter by Platt or on his behalf, except to hold some conferences, and at last prepare the papers for an application. Now, it is impossible in reason to hold that this constitutes due diligence. It has the appearance, rather, of unusual and extraordinary negligence. If the invention was fully conceived, as it is claimed, in 1891, and even then drawings were prepared showing the perfect invention, the preparation of the papers for an application should have required even less than the usual time.

Excuse is sought to be made for the delay on two grounds: first, that Platt did not know that there was any rival in the field; and, second, that he supposed that his patent of 1891 covered the whole invention and the issue of this controversy. But plainly these grounds are unsatisfactory and insufficient. The risk that a rival may appear upon the field at any time is something which every inventor is bound to contemplate and to anticipate, and in this lies the fundamental reason for the requirement of due diligence. And with regard to his understanding of the scope of the patent of 1891, even if that could be allowed as an excuse, which can not be under any known principle of law, such understanding is wholly inconsistent with the conduct of Mr. Platt's attorney, with the knowledge which the attorney had, and with the knowledge which Mr. I. G. Platt must have

had, with all of which, whether they failed to communicate the fact to him or not, he was fully chargeable under the circumstances.

We must conclude that no sufficient reason has been adduced before us to disturb the decision of the Acting Commissioner, and we think that this decision was amply justified by the record in the cause, and that it should be affirmed. It is accordingly hereby *affirmed, and judgment of priority of invention is awarded to Shipley and Hyde.*

*The clerk of this court will certify this opinion and the proceedings in this court to the Commissioner of Patents, to be entered of record in his office, according to law, and it is so ordered.*